Case No. 26-10436

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

IN RE EZRA ISHMAEL YOUNG

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

## OPENNING BRIEF OF MR. EZRA YOUNG

EZRA ISHMAEL YOUNG
LAW OFFICE OF EZRA YOUNG
210 North Sunset Drive
Ithaca, New York 14850
Telephone: (949) 291-3185

*On His Own Behalf*

## CERTIFICATE OF INTERESTED PERSONS

The following persons and entities as described in the fourth sentence of Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that members of the Court may evaluate possible recusal.

### Plaintiff and Her Counsel

1. Cheryl Butler
2. Ezra Ishmael Young, Law Office of Ezra Young
3. Brian Sanford, Sanford Firm
4. Elizabeth Sanford, Sanford Firm

### Defendants and Their Counsel

5. Jennifer M. Collins
6. Steven C. Currall
7. Roy P. Anderson
8. Julie Forrester
9. Harold Stanley
10. Paul Ward
11. Southern Methodist University
12. Kim Juanita Askew, formerly of DLA Piper
13. Mallory T. Bilbo, DLA Piper
14. Robin G. Shaughnessy, Troutman Pepper Locke LLP
15. Aaron S. Nava, Troutman Pepper Locke LLP
16. Kirsten Castañeda, Alexander Dubose & Jefferson
17. Kelly J. Thurman, Southern Methodist University

### Judicial Officer

18. Hon. Ada E. Brown, District Judge, N.D. Tex.

/s/ Ezra Young
EZRA ISHMAEL YOUNG
LAW OFFICE OF EZRA YOUNG

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Young respectfully requests oral argument.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................

STATEMENT REGARDING ORAL ARGUMENT ...................................

TABLE OF CONTENTS ..........................................................................

TABLE OF AUTHORITIES .....................................................................

JURISDICTIONAL STATEMENT ..............................................................

STATEMENT OF THE ISSUES ...............................................................

STATEMENT OF THE CASE ..................................................................

A. Professor Butler's Employment at SMU Law ..............................

B. Judge Brown's Relationship with SMU Law ...............................

C. Procedural History ......................................................................

SUMMARY OF THE ARGUMENT ..........................................................

ARGUMENT ...........................................................................................

I. JUDGE BROWN FAILED TO APPRECIATE THE LIMITS OF JUDICIAL POWER ......

A. Some matters could not be considered ........................................

B. There is no power to compel counsel to agree ..............................

C. Matters cannot be decided in ways to evade review ....................

D. Young's admission should not have been revoked .......................

E. Judicial records cannot be secreted without justification............

F. Judge cannot be witness let alone adversary ..............................

G. If judge appears unneutral, she must recuse ..............................

II. ATTORNEY YOUNG'S CONSTITUTIONAL RIGHTS WERE VIOLATED .................

A. Due Process.............................................................................

B. Equal protection ......................................................................

C. Free speech.............................................................................

III. REASSIGNMENT IS NECESSARY .....................................................

CERTIFICATE OF SERVICE .................................................................

CERTIFICATE OF COMPLIANCE ..........................................................

# TABLE OF AUTHORITIES

## Cases

*Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 227 (1995).

*Alabama v. Smith*, 490 U.S. 794, 798 (1989).

*Albermarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975)

*Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985).

*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

*Baldwin v. Hale*, 68 U.S. (1 Wall.) 223, 233 (1864).

*Bin Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021).

*Bridges v. California*, 314 U.S. 252, 270 (1941).

*Butler v. Collins et al.*,

No. 23-10072, 2024 WL 3633698 (5th Cir. Aug. 2, 2024).

No. 23-10072, 2025 WL 1753612 (5th Cir. June 25, 2025).

714 S.W.3d 562 (Tex. 2025).

*BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209, 210 (5th Cir. 2019)

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)

*Chambers v. State of Florida*, 309 U.S. 227, 241 (1940).

*In re Cheryl Butler and Ezra Young*, No. 25-11324 (5th Cir. filed Dec. 4, 2025)

*Choctaw Nation of Indians v. United States*, 318 U.S. 423 (1943)

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)

*Ex Parte Commonwealth of Virginia*, 100 U.S. 339 (1879);

*Craig v. Harney*, 331 U.S. 367, 376 (1947).

*Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 229 (5th Cir. 1998)

*Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995).

*In re Evans*, 524 F.2d 1004, 1008 (5th Cir. 1975).

*Ex parte Garland*, 71 U.S. 333, 378 (1866).

Gamble v. U.S., 139 S. Ct. 1962, 1985 (2019)

*In re Gee*, No. 19-30953, 2019 WL 13067384, at 8 (5th Cir. 2019)).

*Highmark v. Allcare Health Management System, Inc.*, 572 U.S. 559 (2014).

*Holt v. Virginia*, 381 U.S. 131, 136–38 (1965).

*Hurd v. Hodge*, 334 U.S. 24, 35–36 (1948).

*June Medical Servs., LLC v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022)

*Johnson v. Bd. of County Comm'r*, 85 F.3d 489 (10th Cir. 1996).

*Koon v. United States*, 518 U.S. 81, 100 (1996);

*Langnes v. Green*, 282 U.S. 531, 541 (1931).

*Link v. Wabash Railroad Co.*, 370 U.S. 626, 633 (1962).

*Matthews v. Eldridge*, 424 U.S. 319, 332–35 (1976).

*Martin v. Frankling Capitol Corp.*, 546 U.S. 132, 139 (2005).

*Mayberry v. Pennsylvania*, 400 U.S. 455, 465–66 (1971).

*Miller v. Johnson*, 515 U.S. 900, 911 (1995).

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–14 (1950).

*Moore v. Frazier*, 35 Fed.Appx. 386 (5th Cir. Apr. 10, 2002)

*In re Murchinson*, 349 U.S. 133, 136 (1955).

*Muñoz v. Orr*, 200 F.3d 291, 305 (5th Cir. 2000).

*Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996).

*North Carolina v. Pearce*, 395 U.S. 711, 725 (1969).

*Palmore v. Sidoti*, 466 U.S. 429, 433 (1984).

*Plyer v. Doe*, 457 U.S. 202, 212 (1982).

*PHH Mortgage Corp. v. Old Republic Title Insurance Co.*, 80 F.4th 555, 559 (5th Cir. 2023).

*Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 619 F.3d 458. 460–61 (5th Cir. 2010).

*Regents of the University of California v. Bakke*, 438 U.S. 265, 295 (1978).

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–67 (1980);

*In re Snyder*, 472 U.S. 634 (1985).

*In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993).

*Shelley v. Kraemer*, 334 U.S. 1, 22–23 (1943).

*Tudor v. Southeastern Oklahoma State University and Regional University System of Oklahoma*, 13 F.4th 1019 (10th Cir. 2021),

*United States v. Choctaw Nation et al.*, 179 U.S. 494 (1900)

*United States v. Choctaw Nation and Chickasaw Nation*, 193 U.S. 115 (1904)

*Watson v. Memphis*, 373 U.S. 526, 535 (1963)

*Westmoreland v. United States*, 155 U.S. 545 (1895

*Will v. Hallock*, 546 U.S. 345, 349 (2006)

**Constitution and Statutes**

U.S. CONST. art. III, § 2, cl. 1.

28 USC § 455(b)(1).

**Rules**

Federal Rule of Evidence 605

**N.D. Texas Local Rule 83.10**

**Misc.**

Oral Argument, *Butler v. Collins*, U.S. Court of Appeals for the Fifth Circuit, Feb. 5, 2024

**Oral Argument,** *Butler v. Collins*, Texas Supreme Court, Dec. 3, 2024

Personal Website of Ezra Young, www.ezrayoung.com

## JURISDICTIONAL STATEMENT

This Circuit has jurisdiction over appeal of nonfinal orders issued by the Northern District of Texas pursuant to *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949) and its progeny.

This appeal challenges raises "claims of right separable from, and collateral to, rights asserted in the action" which are "too important to be denied review and too independent of the cause itself to be deferred until final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (citing *Cohen*, 337 U.S. at 546). Violations of litigants' constitutional rights which cannot be meaningfully corrected by appeal of final judgment may be heard on an interlocutory basis. This includes wrongful revocation of pro hac vice admission given the risk of harm to the attorney's professional reputation can be heard immediately. *Moore v. Frazier*, 35 Fed.Appx. 386, 2002 WL 753508, at *4 (5th Cir. Apr. 10, 2002) (citing *Johnson v. Bd. of County Comm'r*, 85 F.3d 489, 492–93 (10th Cir. 1996). Additionally, this Circuit has the supervisory authority to interlocutory appeal grieving a presiding judge's statements and nonfinal decisions that bespeak intemperance if not outright bias.

## STATEMENT OF THE ISSUES

1. Whether the Northern District committed reversible error in preemptively ordering the Attorney Young's response to misconduct allegations and Butler's motion to recuse be filed under seal where no explanation or legal authority in support was provided.

2. Whether the Northern District impermissibly resuscitated grounds for sanction in the Second Show Cause Order previously declined upon remand from this Circuit.

3. Whether the Northern District committed error or abused its discretion when it summarily revoked Attorney Young's pro hac vice admission without explaining its rationales contemporaneously. Alternatively, whether it was permissible to revoke admission without allowing Attorney Young to respond to Defendants' response and affording a hearing.

4. Whether the Northern District lacked the power to issue the Third Show Cause Order against Attorney Young because the noticed conduct was not subject to that Court's authority to police let alone sanction.

5. Whether the Northern District erred or abused its discretion when it sealed the April 24, 2026 hearing transcript based on a faulty Highly Sensitive Document designation.

## STATEMENT OF THE CASE

### A. Professor Butler's Employment at SMU Law

Professor Butler's case should have been a simple affair. She had considerable evidence of discrimination, retaliation, and tortious conduct committed by SMU and her former coworkers. Professor Butler's lawsuit challenges egregious violations of Professor Butler's civil rights and overlapping Texas common law torts attendant to denial of her bid for a tenured professorship in the 2015–16 application cycle. *Butler v. Collins et al.*, No. 23-10072, 2025 WL 1753612, at *2 (5th Cir. June 25, 2025).

### B. Judge Brown's Relationship with SMU Law

Judge Ada Brown has longstanding and enduring ties to Southern Methodist University, specifically its Dedman School of Law (SMU Law). These connections were not affirmatively disclosed by Judge Brown to

the parties during these proceedings. *See* Petition for Rehearing (App. at 118–19).

According to publicly accessible records, Judge Brown served as an adjunct professor of trial advocacy at SMU Law. Official press releases and biographies suggest Judge Brown's employ fell between 2007 and 2017, a period that substantially overlaps with the allegations made in Professor Butler's operative complaint. *See, e.g.*, N.D. Texas Press Release (App. at 16–17); Fed. Judicial Ctr. Biography (*id.* at 18); Federalist Soc'y Biography (*id.* at 19–25); Judicial Nominee Questionnaire (*id.* at 26–76); *The Quad*, Fall 2017 (*id.* at 84–85).

Additionally, close in time it was also discovered that from the point Judge Brown was assigned this matter on September 18, 2019 (ECF No. 60), she has actively established new professional and social relationships with administrators, employees, and students at SMU Law. Close in time to presiding on this case, Judge Brown started participating in SMU Law's Federal Judicial Externship Program, which places current students in chambers for a minimum of 120 hours of training while enrolled in a JD program (App. at 77–78). During this same period, Judge Brown employed then student and later SMU Law graduate

Christa Bunce in her chambers (*id.* at 79–83, 86–87). Based upon the foregoing, Ms. Bunce spent at least 120 hours in Judge Brown's Chambers between January and May 2022—a critical period during in this litigation prior to appeal.

Throughout these proceedings, Judge Brown and SMU Law also publicly held themselves out as having enduring ties. These include Judge Brown doing in person events at SMU Law (App. at 88), as well as both the Dean of SMU Law and Dean of Career Services lauding their and SMU's connection to Judge Brown (*id.* at 89–90). As recently as Fall 2023, SMU Law's alumni magazine highlights Judge Brown's connections to the school (*id.* at 86–87).

**C. Attorney Ezra Young**

Mr. Young is a lawyer and a scholar. He maintains a personal website hosting examples of his scholarly and litigation work. His personal website is www.ezrayoung.com.

Young holds a bachelor's degree in philosophy from Cornell University and a juris doctorate from Columbia Law School. He completed his post-doctoral studies at Columbia Law School under the

supervision of renowned legal theorist Kimberlé Williams Crenshaw. Young has served as a visiting law professor at Cornell Law School and is an incoming visiting law professor at Western New England School of Law. At both institutions Young specialized in constitutional law. *See* www.ezrayoung.com/bio. Young has extensively published on nondiscrimination and matters of constitutional law over the last decade. *See* https://www.ezrayoung.com/publications. He is also a sought-after expert and has given more than a hundred invited lectures and speeches before court systems, law schools, law firms, professional associations, nonprofits, and community groups. *See* https://www.ezrayoung.com/speaking.

Young has never been denied admission to a court. Young is a member in good standing of the bars of the United States Supreme Court, United States Courts of Appeals for the Fifth and Tenth Circuits, United States District Courts for the Southern District of New York and District of Columbia, as well as New York and the Chickasaw Nation. Record.

Young's applications for pro hac vice admission have never been denied. Record. Setting aside the orders grieved in this appeal, Young has never been found to have committed misconduct let alone disciplined.

Since Young's admission in New York in 2014, he is aware of a single grievance filed by a former client, Dr. Rachel Tudor. He represented Dr. Tudor in her successful bid to redress discrimination and retaliation in connection with her bid for tenure at a public university in Oklahoma.

In brief, after prevailing on appeal in *Tudor v. Southeastern Oklahoma State University and Regional University System of Oklahoma*, 13 F.4th 1019 (10th Cir. 2021), Dr. Tudor purported to settle around Young and other attorneys' liens. Around this time Dr. Tudor filed an ethics grievance accusing Young of egregious misconduct. Anong other things, Young was falsely accused of beating Dr. Tudor in front of the presiding judge and jury at trial, losing aspects of the merits case that were not lost, and a bizarre quid pro quo as an attempt to obfuscate the fact that Young and his female cocounsel terminated representation pending appeal because she became harassing and abusive. Dr. Tudor also filed multiple grievances against Young's female cocounsel. Those grievances were all investigated. In Fall 2021, New York ethics authorities dismissed the grievance against Young finding no misconduct was committed. ECF No. 257 at 95.

Presently, Young and his cocounsel are suing Dr. Tudor and others for their fees and costs earned in the merits case in *Tudor v. Galindo et al.*, No. 5:22-cv-480-JD (W.D. Okla. filed June 13, 2022). ECF No. 257 at 93–94. In that trial case and a related appeal, Dr. Tudor has repeatedly insisted that Young committed misconduct previously adjudicated by ethics authorities. ECF No. 257 at 94–105.

Young's primary motivation for helping Professor Butler is his steadfast commitment to challenging discriminatory denials of tenure experienced by minority women professors. That commitment is longstanding. Through his studies under, work with, and continued family connection to Professor Crenshaw, Young developed a strong interest in redressing academic bias, with a specific interest on the plight of Black women academics. ECF No. 257 at 123–24.

**C. Procedural History**

The case below was originally assigned to the Honorable Sam Linsdey in 2018. Early on, Professor Butler's tort claims were dismissed on the premise that they were preempted by the Texas nondiscrimination law. In September 2019, this matter was reassigned to the Honorable

Ada Brown. ROA.574–579. However, Judge Brown failed to disclose she was previously employed by SMU Law and that her tenure overlapped with events at the heart of Professor Butler's case.

From October 2019 through January 2023, Judge Brown entered orders threatening to sanction Professor Butler and her various counsel, the vast majority of which turned on faulty premises, fabrications, and untruths urged by Defendants' then lead counsel Attorney Kim Askew. During this period Judge Brown was unusually hostile towards Professor Butler. Transcripts during this period reflect Judge Brown was habitually baited by Attorney Askew's unsubstantiated insistence that Butler was lying.

Young appeared in January 2023 with the intent of preserving issues for appeal to this Circuit. This was met with immediate hostility by Judge Brown. Motions seeking basic relief were summarily denied to Butler's detriment. Some without waiting for Defendants to even file opposition. Some at the behest of Butler's terminated counsel, Attorney Dunlap, who Judge Brown refused to allow his withdrawal.

Statements at the early March 2022 status hearing are particularly illustrative of Judge Brown's hostilities towards Young when he was

simply advocating his client's positions. For instance, Judge Brown told Young that, based on what he filed "you don't know this case. You're not ready for trial." ROA.3947. Despite Attorney Dunlap missing and seeking multiple extensions to docket summary judgment opposition and never doing so, Judge Brown insisted "Mr. Dunlap knows what's going on and you don't." ROA.3947. At the end of that hearing, Judge Brown condemned Young, stating "I hope next time we meet, Mr. Young, you don't—it's—it's a little more professional." ROA.3951.

In late March 2022, the Northern District summarily denied Professor Butler's Rule 56(d) motion seeking production of her tenure box. In April 2022, the Northern District summarily granted summary judgment disposing of all claims.

***First Show Cause Order.*** In early December 2022, the Northern District issued an omnibus order providing post hoc reasons to deny the Rule 56(d) motion and threatened to sanction Attorney Young on the pretense that he was not procedurally permitted to file such motion and also insisted that the tenure box had been produced without evidence of prior production ROA.3078–94.

Between early December 2022 and mid-January 2023, Attorney Young reached out to other litigators and law professors seeking advice given his suspicion that something was seriously wrong with Judge Brown. While conducting extensive research and reviewing other cases recently pending before Judge Brown, Attorney Young uncovered evidence suggesting an impairment. As part of his due diligence, Young consulted law professors who referred him to a senior judge on the U.S. Court of Appeals for the Second Circuit with whom Young shared his concerns. Ultimately, the Second Circuit referred the problem to this Circuit for further investigation. ECF No. 207 at 6–10

On January 19, 2023, the Northern District conducted a days' long show cause hearing against Attorney Young. Judge Brown and Attorney Askew used the proceeding to intimidate, threaten, chastise, and falsely accuse Young and Butler of things that never happened.

Judge Brown paired ridicule of Young for seeking the tenure box with factually impossible claims. For instance, when Young confirmed that he personally reviewed all discovery propounded prior to filing the Rule 56(d) motion, Judge Brown responded, "So you – clearly did not reviewed it. Because I reviewed it yesterday." ROA.4010. But it was

impossible for Judge Brown to have reviewed all the discovery propounded in this case because it was not filed on the docket. This is something Judge Brown should have known in part because Defendants never filed a response to the Rule 56(d) motion—it was summarily denied before the deadline for response hit.

Nevertheless, Judge Brown went on to claim she had personal knowledge of the production of the tenure box. She insisted: "This thing exists. The tenure box file was tendered multiple times. I saw it. I read it. It's a thing." She went on to mock Young, insisting: "Now, that you don't see Snufflelupagus doesn't mean he's not here." ROA.4073. (Young was born in 1986, by which time SESAME STREET no longer insisted adults could not see that character. Young understands the change was initiated for fear it taught children the wrong lesson—that adults in authority would not believe them even when they told the truth. The irony of this reference is not lost on Young.)

Despite repeatedly stating that the purpose of the hearing was to give Young an opportunity to respond, Judge Brown refused to allow him to speak more than a few sentences at a time. When Young attempted to make a record for appeal by speaking "for a bit" without interruption, an

ordinary request from counsel, Judge Brown lashed out. She interrupted Young and quipped, “here you do not talk over federal judges who are talking to you at your show-cause hearing, determining your fate. So it would be wise for you to hold your tongue for a moment.” ROA.3996. She additionally denigrated Young by asking whether he had “been in federal court before”. ROA.3997. Judge Brown continued to mock Young, stating “did you hear what you just said? Did you hear what came out of your mouth?” and followed that with “this is not a tap dance on American Idol.” ROA.3998. She then belittled Young’s prior litigation experience, suggesting Young’s request was tantamount to making judges “sit there like a monkey and do nothing.” ROA.3998.

Judge Brown also disparaged Young by comparing him disfavorably to Attorney Askew. For instance, Judge Brown insisted Askew is “nationally respected” whereas Young had “never had reason to do anything.” ROA.4048 to ROA.4049.

Judge Brown also disparaged Butler, who was not subject of the show cause order, in what objectively appears to be an effort to intimidate her and Young out of seeking appeal. For instance, Judge Brown insisted that neither she nor any other tribunal cares about Professor Butler’s

plight and no appellate court would come to her rescue (Record). Judge Brown also decreed that "no one is watching this case" (*id.* at 222), other law schools and law professors do not care (*id.* at 133, 220–21), and that the entirety of the merits case was "nonsense" (*id.* at 222–23). Shockingly, Judge Brown stated that "nobody's reading" what Attorney Young filed below (*id.* at 225).

Despite having no forewarning in the First Order to Show Cause of the charge, Judge Brown accused Young of anti-Black bias and purported to interrogate him under threat of sanction. This was bizarre under the circumstances given Butler's identity and the nature of the claims brought below. Nevertheless, Judge Brown insisted that Young's disagreements with Attorney Dunlap, Attorney Askew, and Judge Brown, all of whom are also Black, proved animus.

The racially charged accusations were premised on a forbidden logic—because Young is a white man (as per Judge Brown), he must harbor animus towards non-white men. Supposed evidence of bias included a single email Young sent to Attorney Askew addressing her by her first name. Record. Judge Brown charged that it was inherently bigoted to refer to another lawyer by their first name, despite the fact

that she had up to that point repeatedly referred to Young by his first name at the hearing. Record. After Young explained as much—which the Court handled off-record—Judge Brown occasionally referred to Young by the title Professor. Record.

A couple hours after the hearing terminated (*id.* at 14), Judge Brown issued a merits opinion on summary judgment and an order (*id.* at 15) declining to sanction Attorney Young on the pretense that the case was forever terminated (App. Vol. 1 at 60–63). Later that evening, Attorney Young filed a notice of appeal to this Circuit (*id.* at 29).

In 2023, the parties briefed Professor Butler's appeal to this Circuit. In February 2024, this Circuit heard oral argument. Attorney Young was her sole counsel on brief and made oral argument. *Butler v. Collins*, U.S. Court of Appeals for the Fifth Circuit, Feb. 5, 2024, https://www.youtube.com/watch?v=0dbYlCxD8JA. In August 2024, this Circuit certified a question to the Texas Supreme Court seeking clarity as to whether the Texas nondiscrimination law preempted tort claims. *Butler v. Collins et al.*, No. 23-10072, 2024 WL 3633698 (5th Cir. Aug. 2, 2024). The certified question was accepted.

In December 2024, the Texas Supreme Court heard oral argument on the tort preemption question. There Attorney Young served as lead counsel and made oral argument. *Butler v. Collins*, Texas Supreme Court, Dec. 3, 2024, https://www.youtube.com/watch?v=43Kb9bJoaT4. He was also joined by Professor-Attorney Warigia Bowman of the University of New Mexico on brief.

In May 2025, the Texas Supreme Court unanimously ruled that state nondiscrimination law does not preempt common law tort claims. *Butler v. Collins et al.*, 714 S.W.3d 562 (Tex. 2025). (It bears noting that the highest authority on Texas tort law agreed with Professor Butler, not SMU, which continues to insist she was denied tenure because she is bad at tort law.)

In June 2025, this Circuit overruled the Northern District's dismissal of Professor Butler's tort claims. *Butler v. Collins et al.*, No. 23-10072, 2025 WL 1753612 (5th Cir. June 25, 2025). However, challenges to Judge Brown's other orders were denied on the premise that even though a "more indulgent judge" may have properly granted them, it was not a per se abuse to deny them. *Id.* at ___. With respect to reassignment,

this Circuit declined to so order, but its mandate directs Judge Brown to consider whether her recusal is required. *Id.* at ___.

***Second Show Cause Order.*** On November 5, 2025, the Northern District issued an omnibus order (ROA.3203–3216) setting rapid, overlapping briefing deadlines and demanding the parties' counsel confer and stipulate to a schedule through trial with the suggestion that no further discovery is permitted and Judge Brown would not recuse. That same order directed Young to show cause for why his pro hac vice admission should not be withdrawn for the grounds declined in January 2022 and newly alleged suggestion that he violated Local Rule 83.10 (*id.* at 74), despite a prior order excusing his compliance (*id.* at 23, 87, 110).

On November 17, 2025, the Northern District modified its order, now directing all briefing respecting sanctioning Young and recusal be filed under seal and ordering Professor Butler to preemptively retain local counsel by December 5, 2025. *Id.* at 79. No explanation let alone reference to applicable law was made. Later that same day, Attorney Young sought clarification and pointed out that he had been excused from Local Rule 83.10 and thus retention of local counsel was unnecessary (ROA.3235 to ROA.3236). No clarification was provided.

On November 19, 2025, Attorney Young filed under seal his opposition to revocation of his admission pro hac vice. App. Vol. 1 at 88–118. Part of that filing discloses that Attorney Young was a cooperating witness in an investigation of Judge Brown in explanation of his due diligence to oppose resuscitated show cause grounds years prior (*id.* at 99–102). Young also pointed out constitutional barriers to revoking his admission under these circumstances and posited that he fears retaliation from Judge Brown for opposing sanctions.

On November 25, 2025, Attorney Askew notified Attorney Young that she and her firm were terminated and that a new firm would soon appear.

Things went sideways on the day before Thanksgiving. On November 26, 2025, at 11:33am CST (*id.* at 19), Attorney Askew filed a response urging Judge Brown to revoke Young's admission. That filing, which cites no legal authorities and proffers no evidence in support, suggests revocation is appropriate punishment because Young admits he cooperated in an investigation of Judge Brown. At 12:00pm CST (App. Vol. 3 at 20), Attorney Askew moved for herself and her law firm DLA

Piper to withdraw (App. Vol. 1 at 123–24). At 12:15pm CST new counsel for Respondents docketed a motion to substitute (App. Vol. 3 at 21–22).

Upon notice of new counsel, Attorney Young reached out to coordinate conferral on the joint report compelled by the Northern District. It was tentatively agreed that counsel would confer in person as required by chambers rules in Dallas, Texas on December 10, 2025 (*id.* at 9–10). He also requested conferral separately on a motion to strike Respondents' response calling for his disbarment (*id.* at 11). He additionally sought conferral on a proposed amendment to add a claim for fraud on the court premised on Professor Butler's missing tenure box, that fraud having been directly perpetrated by Attorney Askew (*id.* at 9).

Hours later, Judge Brown sua sponte entered an electronic order disbarring Attorney Young without explanation or legal grounds. Record. This having been done at 8:34pm CST (*id.* at 23), Attorney Young sent an emergency email to the clerk of the Northern District requesting permission to file Professor Butler's motion for recusal via email. In those communications, Attorney Young indicated his sincere belief that Judge Brown was retaliating against him (*id.* at 12–13). Both the motion and

supporting appendix were accepted and stamped as timely filed (App. Vol. 1 at 31).

On December 4, 2025, Young and Butler jointly filed a writ of mandamus to this Circuit, which was styled *In re Cheryl Butler and Ezra Young*, (5th Cir. filed Dec. 4, 2025). This Circuit invited Judge Brown to respond to the mandamus petition, but she declined. However, while the writ of mandamus was pending, Judge Brown issued a retroactive notice purporting to explain why Young's admission was revoked. Record. However, the notice did not explain why Judge Brown deprived Young of full briefing on the schedule she set by her prior order which called for Young to file a reply on December 1, 2025 Record. Nor did Judge Brown explain why Young was not afforded a hearing. Record.

In February 2026, this Circuit summarily denied Young and Butler's writ of mandamus. Shortly thereafter, Judge Brown summarily struck Butler's recusal motion as a purported further punishment of Young which also had the effect of foreclosing Butler from seeking recusal upon retention of new counsel. Record.

***Third Order to Show Cause.*** On April 22, 2026, Judge Brown issued yet another order to show cause against Young, this time charging that Young's personal website, which hosted copies of the writ of mandamus and its supporting appendix, violated Judge Brown's November 2025 sealing orders. Record. No legal explanation of that violation was posited. And, inexplicably, the show cause order attached partial trial transcripts from the November 2017 jury trial he handled for Dr. Tudor in the Western District of Oklahoma. Record. Again, Judge Brown ordered Young to file all responses under seal. Record. This left Young in the unfair position of facing serious and potentially career ending accusations of misconduct by a federal judge which were publicly disclosed, but without the opportunity to defend his good name on the public docket. Record.

Making matters worse, Young was provided only 24 hours from the order's issuance to docket a merits response. Record. And only 48 hours to travel more than one-thousand miles from his home in Ithaca, New York to Judge Brown's courtroom in Dallas, Texas to appear at a show cause hearing. Record.

Later that day on April 22, 2026, Young filed a letter informing the Northern District of other obligations that made it difficult for Young to travel to Dallas for an in person hearing which included his own health problem and caregiving responsibilities for a mentor with dementia who is living with him. Record. (That mentor's name, Luke Charles Harris, was later disclosed with his permission.) On April 23, 2026, Young filed a formal response to the show cause order. Record.

On April 24, 2026 Young woke up at three in the morning and boarded an early morning flight to Dallas to appear. Record. The in person show cause hearing was bizarre and wildly inappropriate. The transcript appears below at ECF No. ____ and partial copies of the Northern District's exhibits appear at ____.[1]

Over the course of nearly three hours, Judge Brown accused Young of hating Black people as apparently proved, among other things, by presenting Young with pictures of his dog Thurgood dressed up as

---

[1] Some exhibits were hundreds of pages long at the hearing, but only a couple pages were docketed. Some exhibits appear to have been marked up by Judge Brown *after the hearing*. The Court did not allow Young to keep copies of the exhibits presented at the hearing. And the court reporter, Ms. Barr, indicated via email that she does not have any copies of the exhibits from the hearing.

Thurgood Marshall for Halloween. Record. Judge Brown also presented Young with his social media posts claiming they proved he had stalked her. Record. Judge Brown also questioned Young about why he had criticized her rulings on social media. Record. Judge Brown also accused Young of defaming Attorney Askew and Attorney Dunlap because they were Black. Record.

Over the course of the hearing Judge Brown repeatedly used derogatory slurs to refer to Young. Record. Judge Brown appeared to believe that Young as "white man" was unworthy of respect and common decency, and on that premise adjudged Young of having done things he never did to others because of his presumed bias against non-white men. Record. (Young is Latino. Record. But Judge Brown refused to accept that fact. Record.)

Between jabs and insults, Judge Brown charged that there was no legitimate reason why Young, a constitutional scholar and civil rights lawyer, would be interested in the rights of African Americans despite, among other things, him currently serving as the secretary of the board of the African American Policy Forum, a gender and racial justice think

tank co-founded by his mentors Professors Kimberlè Crenshaw and Luke Harris. Record. That Young, Crenshaw, and Harris consider themselves family was also brushed aside and ridiculed. Record.

At length, Judge Brown insisted that Young specifically was bigoted against Black women. This is despite, among other things, Young pointing out his close friend, mentor, and mother-figure Professor Crenshaw is a Black woman. Record. And despite Young pointing out Crenshaw is widely celebrated for her articulation of intersectionality, a grand theory used to explain and famously invoked to describe the specific ways Black women are underserved and underprotected by nondiscrimiantion and equal protection law. Record. Undettered, Judge Brown insisted that Young hated "Black excellence." Record. This persisted even when Young explained that one of his motivations for taking on caretaking duties of Professor Harris was that Professor Crenshaw needed time and space to travel around the world to launch her memoir *Backtalker: An American Memoir*. Record.

Inexplicably, Judge Brown purported to quiz Young on the history of lynching in the United States during the proceeding. Record. That

sordid history, which Young has studied, has no relation to the merits case below beyond Judge Brown's false accusation that Young told a reporter who covered the appellate branches of Butler's merits case that evidence below included a statement by a coworker which characterized Butler's treatment as being "as if they lynched you." Record. (Young did not speak to the reporters and law dean who invoked that quote in pieces published after his oral argument at the Supreme Court. They appear to have drawn it from filings made in the Texas Supreme Court which reference, among other things, documents struck by Judge Brown which contain that statement. Record.)

Judge Brown made similarly bizarre accusations concerning Young's longstanding interest in Native American sovereignty and civil rights. Record. Judge Brown also chastised Young because he stated that that Judge Brown's own tribe, the Choctaw Nation of Oklahoma, is historically related to the Chickasaw Nation of Oklahoma. Record. *But see, e.g.*, *Westmoreland v. United States*, 155 U.S. 545 (1895) (exploring rights jointly afforded Choctaw and Chickasaws to prosecute persons who reside in either's territory or who are deemed members of either nation); *United States v. Choctaw Nation et al.*, 179 U.S. 494 (1900) (examining

joint treaty rights of Choctaw and Chickasaws); *United States v. Choctaw Nation and Chickasaw Nation*, 193 U.S. 115 (1904) (same and additionally summarizing interconnected histories of the Chickasaw and Choctaw during and immediately after the Civil War with specific emphasis upon land allotments afforded to freedmen—Black persons previously held in slavery by the Nations); *Choctaw Nation of Indians v. United States*, 318 U.S. 423 (1943) (same).

Judge Brown also falsely accused Young of committing misconduct in other jurisdictions. Record. No evidence of Young's alleged misconduct was presented in the hearing, but Judge Brown indicated that she had secret evidence she would not share that was damning. Record. Judge Brown also accused Young of being disciplined for misconduct by the Honorable Robin Cauthron of the Western District of Oklahoma on multiple occasions, which never happened. Record.

As one example, Judge Brown insisted that Young was sanctioned for filing multiple motions for reconsideration in Dr. Tudor's merits case. Record. Young did file multiple motions for reconsideration, including successive motions seeking to correct mathematical errors made by the

Western District in calculating Tudor's wages as well as the refusal to grant the equitable make whole remedy of reinstatement. But Young was not disciplined for those filings. And the Tenth Circuit ultimately overturned the wage calculation orders on appeal (*Tudor*, 14 F.4th at 1041–45) as well as granted Tudor reinstatement with tenure (*id.* 1033–1041). As another example, Judge Brown repeatedly accused Young of sexually assaulting Dr. Tudor despite Young pointing out that that never happened and the ethics grievance had been dismissed on the merits in September 2021. Record.

Judge Brown also insinuated that Young had lied to the Northern District and other tribunals that had admitted him outright or pro hac vice because she was certain he had committed and had been previously punished for misconduct. Record. As one example, Judge Brown accused Young of not disclosing Dr. Tudor's dismissed ethics grievance when he sought admission pro hac vice in January 2022. Record. But that fact was disclosed in his application. Record. As another example, Judge Brown accused Young, who had months prior been admitted to the Supreme Court bar, of lying because he did not disclose Judge Brown sanctioned him. Record. This was even though when Young was admitted in October

2025 Judge Brown had yet to sanction him—that did not occur under late November 2026. Record. As yet another example, Judge Brown brazenly insisted that Young was obliged to disclose her revocation of his pro hac vice admission to all other tribunals as misconduct. Record. When Young pointed out he was in the process of working out what must be reported to relevant tribunals and was working with ethics and cocounsel on this still, Judge Brown insisted he cease getting legal advice and follow her oral order to report himself. Record.

Judge Brown also threatened to go to every judge Young had ever appeared before to uncover misconduct in both closed and active proceedings around the nation. Record. This was premised on Judge Brown's contention that as a Black judge she had special privileges to investigate Young because of his race and sex. Record. This included, per Judge Brown, the power to interfere with ongoing litigation in other jurisdictions. Record.

With no actual evidence of Young's misconduct, Judge Brown went on to berate and insult Young, called him a bevy of sexist and racist slurs,

and chastised Young for lacking knowledge of some of the slurs thrown at him. *See, e.g.*, Record.

After the hearing, Judge Brown ordered Young to disclose the names and races of clients and judges before whom he appeared and identify all cases in which he appeared as counsel. Record. Young partially complied by pointing out that his personal website compiles most cases he has handled and the vast majority not named there are accessible on Pacer. Record. In declining further compliance, Young pointed out that it is not within the judicial power to compel an attorney to disclose facts about his clients. Record. He also urged that Young's identity and that of his clients and judges should not be interrogated in this way. Record.

On April ___, 2026, Judge Brown purported to upload the "exhibits" handed to Young at the hearing. Record. However, they do not comport with Young's description of the exhibits at the hearing let alone his contemporaneous memoralization docketed hours after the hearing. Record.

On April ___, 2026, Judge Brown filed a declaration naming herself as a witness to the hearing. Record. In that writing, Judge Brown claimed that she and her staff were subjects of violent threats and thus required protection of their government email addresses—information that is both publicly accessible and which Judge Brown disclosed to Young by providing her own emails as exhibits at the show cause hearing. Judge Brown also attached, as an example of a threat, an email she identified as coming from her former veterinarian criticizing a decision made in an unrelated case presently pending appeal before this Circuit. Record.

On May 1, 2026, the day that Young was supposed to receive the transcript of the April 24 hearing from the court reporter, Judge Brown intervened and blocked its delivery. Record. On May 4, 2026, Judge Brown sua sponte sealed the entirety of the hearing transcript on the pretense that it contained identifying information of a victim of sexual assault and otherwise posed national security concerns. Record.

On May 6, 2026, Young filed a notice of interlocutory appeal. Thereafter, Young informed the Northern District that, as per his former client's counsel, there had been no contact with Judge Brown. Young also

informed the Court that Judge Brown's false accusations against him were actively being weaponized by opposing counsel in other cases pending in other jurisdictions including in the Western District of Oklahoma and the Kansas Court of Appeals. Record.

## SUMMARY OF THE ARGUMENT

The limits of judicial power are as important as their reach. Many of Judge Brown's errors and abuses flow from her misapprehension of how discretionary and inherent authority may be exercised. Repeatedly, Judge Brown presumed she was empowered to do as she pleases so long as the matter was discretionary. The same occurred where Judge Brown labeled her decisions as falling within federal trial courts' inherent powers. Not so. Such decisions at the very least must comport with constitutional limits on the judicial power which include requirements that individual rights not be trampled as well as the appropriate legal tests be correctly applied to properly adduced facts.

Judge Brown should not have preemptively directed the sealing of filings responding to allegations of misconduct let alone Butler's motion to recuse. Judicial records are presumptively public documents. At the

very least, Judge Brown was obliged to carefully consider and provide legal rationales keyed to facts below justifying sealing. Failing to provide any rationale whatsoever for sealing is not within the judicial power. Separately, it was both legal error and an abuse of discretion for Judge Brown to hold at the April 2026 hearing that the transcript would be public and then days later turn around and purport to seal it as a Highly Sensitive Document on premises not permitted by local general orders.

Attorney Young did not commit misconduct. The record reflects that Judge Brown was unusually hostile towards Young throughout the proceedings below. Basic requests by counsel seeking explanations for rulings, losing motions, filing of documents on appellate dockets over which Judge Brown has no authority to police, were castigated as misconduct despite none qualifying as such under governing law. More troubling still, Judge Brown openly and unabashedly ignored the limits of the judicial power in a quest to manufacture misconduct allegedly occurring outside the Northern District to try to conjure up grounds for punishing Young below. This did not cease when Young's pro hac vice admission was summarily revoked in 2025. Months later in April 2026 Young was dragged back into the Northern District on the pretense that

his personal website violated a staledated sealing order because it hosted appellate documents filed on this Circuit's public docket. Any competent jurist should have known she had no such power.

Given the unique circumstances of this case, this matter should be reassigned upon remand. Young has previously reported evidence of judicial misconduct and disability to this Circuit through appropriate channels of which Judge Brown is aware. This should have triggered immediate recusal. Upon learning of those facts, Judge Brown instead punished Young by revoking his admission and punished his client Butler by striking a motion seeking recusal that this Circuit previously directed Judge Brown to consider on remand. This also merits reassignment. Additionally, Judge Brown should be removed in light of her failure to disclose let alone explain why she did not recuse herself from this matter in light of her longstanding and close relationship to SMU Law. This is all the more alarming given that that relationship has considerably deepened while this case was pending. Separate and apart for those grounds, this Circuit should order reassignment given Judge Brown's abject hostilities towards Butler and Young. Even if not proof of

actual bias, the appearance of impropriety is so strong as to require reassignment on this record.

# ARGUMENT

## I. JUDGE BROWN FAILED TO APPRECIATE THE LIMITS OF JUDICIAL POWER.

### A. Judicial power is not unlimited.

Discretionary authority is not unlimited. *Muñoz v. Orr*, 200 F.3d 291, 305 (5th Cir. 2000). Where law confers matters to the discretion of the trial judge, she may not simply do as she pleases. "Discretion is not a whim." *Martin v. Frankling Capitol Corp.*, 546 U.S. 132, 139 (2005). It must be exercised "with regard to what is right and equitable under the circumstances and the law, and directed by reason and conscience of the judge to a just result." *Langnes v. Green*, 282 U.S. 531, 541 (1931).

No federal judge has the power to make decisions unfettered by law. Discretionary decisions are "not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975) (cleaned up). That power is generally conferred is inconsequential. Decisions must be

made within the permissible range of the court's judicial power. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633 (1962).

A trial judge has no power to invert governing law. Decisions relying upon erroneous factual findings or legal conclusions, or which misapply the law to the facts, are abuses of discretion. *See, e.g.*, *Koon v. United States*, 518 U.S. 81, 100 (1996); *Highmark v. Allcare Health Management System, Inc.*, 572 U.S. 559. 564–64 & n.2 (2014). This includes the trial judge's failure to consider a relevant factor that should have been given significant weight. *PHH Mortgage Corp. v. Old Republic Title Insurance Co.*, 80 F.4th 555, 559 (5th Cir. 2023).

The trial judge's invocation of inherent powers does not change the calculus. Inherent authority does not eliminate prerequisites governing exercise of judicial power. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–67 (1980); *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). For instance, while trial courts have the inherent authority to manage their own dockets, they cannot act arbitrarily or willfully. The power is

conditioned on its exercise to achieve the just and efficient disposition of cases. *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993).

Similarly, when a trial judge invokes her inherent authority to sanction counsel it must be exercised in the most careful manner. "Because of the potency of inherent powers and the limited control of their exercise . . . they must be used with great restraint and caution." *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996).

"Inherent authority is not a broad reservoir of power, ready at an imperial hand, but a limited source." *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 619 F.3d 458. 460–61 (5th Cir. 2010). "The hand of the district court . . . is sometimes wont to be imperial" and where inherent power is invoked "the attorneys practicing at its bar are likely to be in their most vulnerable setting." *Crowe v. Smith*, 151 F.3d 217, ___ (5th Cir. 1998). Consequently, trial judges must premise inherent power sanctions upon specific findings determining that the punished acted in bad faith. General complaints about the sanctioned party do not suffice. *See, e.g.*, *Kennard Law P.C. v. United Airlines, Inc.*, No. 23-20430, 2024 WL 3717272 at *5 (5th Cir. Aug. 8, 2024) (unpublished).

**B. Fact and law findings cannot evade review by labeling them credibility determinations.**

Judge Brown's penchant for holding hours long hearings months after issuing opinions, and long after the window to punish had passed, should not be countenanced. On this record it is readily apparent that Judge Brown conducted such hearings for ulterior purposes. She sought to ridicule counsel into submission. And when that was not achieved, Judge Brown insisted that violations of Attorney Young and Professor Butler's rights could be ignored.

One particularly noxious tactic Judge Brown employed was purporting to use the judicial power to transform disputes of fact as credibility determinations. On multiple occasions, Judge Brown also purported to find Attorney Young and Professor Butler not credible about litigation facts raised in filings and conversely deemed their opponents blanketly credible. This is improper. A trial judge cannot insulate her findings from review by "denominating them as credibility determinations." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985).

**C. Judges cannot be witnesses.**

A federal judge cannot offer testimony in a proceeding in which she is also the judge. For the sake of argument, if a judge has relevant evidence that makes her a necessary witness, she must recuse from the case. *See, e.g.*, Federal Rule of Evidence 605; 28 USC § 455(b)(1).

Judge Brown's Declaration appears to make her a witness within a proceeding in which she is presently serving as a judge. Among other things, that filing notes that Judge Brown has personal knowledge of exhibits in this case, appends an email which has no relation to this proceeding but is identified as from my former veterinarianm and the same is sworn to "under penalty of perjury. *See* ROA.3329–31.

Similarly, Judge Brown's statements at the January 2023 hearing in which she insists she has personal knowledge of the production of discovery not evidenced on the docket is also inappropriate.

**D. The judicial power does not allow violation of individual rights.**

Article III confers awesome powers upon judicial officers. U.S. CONST. art. III, § 2, cl. 1. But that delegation is not absolute. The judicial power "must be understood in light of the Constitution's status as the supreme legal document over other sources of law." Gamble v. U.S., 139 S. Ct. 1962, 1985 (2019) (Thomas, J., concurring).

Courts created by constitution are necessarily delimited in the proper execution of their judicial duties under that same charter. *Shelley v. Kraemer*, 334 U.S. 1, 22–23 (1943). Constitutional safeguards, of which express individual liberties are among the most sacrosanct, cannot be subverted. *See Watson v. Memphis*, 373 U.S. 526, 535 (1963) ("constitutional rights may not be denied simply because of hostility to their assertion or exercise").

**1. Due Process**

Young was owed due process to be heard on his opposition to all three of the show cause orders issued by Judge Brown. *Baldwin v. Hale*, 68 U.S. (1 Wall.) 223, 233 (1864). The proceedings below missed the mark.

At minimum, "[a] fair trial in a fair tribunal is a basic requirement of due process." *In re Murchinson*, 349 U.S. 133, 136 (1955). "Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness." *Id.*

The transcripts and orders below reflect that Judge Brown initiated sanctions proceedings against Young on best flimsy pretenses. Those errors were compounded by the limited process afforded.

Holding a hearing in which counsel is not permitted to meaningfully respond to questions and is barred from making a record for appeal violates due process. Process cannot be so deficient that it is incapable of guarding against wrongful deprivation of the interests at stake. *Matthews v. Eldridge*, 424 U.S. 319, 332–35 (1976). The hearing must at the very least allow one to be heard at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). The right to be heard has "little reality or worth" without the genuine ability to contest the proceeding. *Mullane*, 339 U.S. at 314.

A show cause hearing in which the presiding judge proffers supposed evidence of wrongdoing or lodges new accusations without prior notice also violates due process. Advance notice "appropriate to the nature of the case" must be provided. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–14 (1950).

Judge Brown also violated Young's right to due process when she revoked his pro hac vice admission before briefing closed and denied him

a hearing. Attorneys have a constitutional interest in retaining admission to practice before the tribunal that previously granted the privilege. "[Admitted attorneys] hold their office during good behavior, and can only be deprived of it for misconduct ascertained and declared by the judgment of the court after opportunity to be heard has been afforded." *Ex parte Garland*, 71 U.S. 333, 378 (1866). *See also Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 229 (5th Cir. 1998) (same). A hearing must be provided before admission is revoked and advance notice of all alleged misbehavior must be provided. *In re Evans*, 524 F.2d 1004, 1008 (5th Cir. 1975).

The ire with which Judge Brown approached the two show causes hearings below is defies due process. Counsel cannot be punished for exercising his and his client's constitutional rights. *Holt v. Virginia*, 381 U.S. 131, 136–38 (1965). Punishment is also wrong where it seeks to curtail the right to defend against charges made. *Id.* at 138.

That Judge Brown premised punishment pursuant to the Second Show Cause order on Young's appellate efforts also violates due process. Proceedings cannot be infected by judicial vindictiveness. This can arise where a judge retaliates against a litigant who prevails on appeal. *North*

*Carolina v. Pearce*, 395 U.S. 711, 725 (1969). Retaliating because of appellate success cannot be countenanced because it burdens the right to appeal. *Alabama v. Smith*, 490 U.S. 794, 798 (1989).

Similarly, Judge Brown Judge Brown could not use the Third Show Cause Order as a vehicle to punish Young for seeking reassignment. Judge Brown's displeasure with Attorney Young's suggestion that she is biased and must recuse is an improper basis to punish him and his client. Again, counsel and parties cannot be punished for exercising their constitutional rights. Moreover, even outrageous conduct by a litigant does not give the judge license to become his adversary. *Mayberry v. Pennsylvania*, 400 U.S. 455, 465–66 (1971).

**2. Equal Protection**

Judge Brown repeatedly insisted that as a "white man," Young was predisposed to bigotry against persons who do not share his sex and race. On that presumption, Judge Brown purported to search for evidence to confirm bigotry existed. Where no evidence could be found, Judge Brown tautologically concluded she is empowered to dig into all cases in which Young appeared. This logic is forbidden by equal protection.

Judge Brown's insistence that she had special privilege to hyper-scrutinize Young because of her race and sex and because of his race and sex fundamentally misapprehends equal protection's limit on judicial power. Our constitution forbids government from treating members of some groups as special wards in need of protection. *Regents of the University of California v. Bakke*, 438 U.S. 265, 295 (1978). Government must treat citizens as individuals, not simply as components of racial or sexual classes. *Miller v. Johnson*, 515 U.S. 900, 911 (1995).

The judicial power conferred by Article III does not contain the power to violate equal protection. *Hurd v. Hodge*, 334 U.S. 24, 35–36 (1948). The judicial power cannot be wielded to authorize, enforce, or give effect to discriminatory schemes. *See, e.g.*, *Ex Parte Commonwealth of Virginia*, 100 U.S. 339 (1879); *Shelley v. Kraemer*, 334 U.S. 1 (1948). For federal judges, there is "[n]o higher duty, no more solemn responsibility [] than that of translating into living law and maintaining this constitutional shield deliberately planned and inscribed for the benefit of every human being subject to our Constitution—of whatever race, creed, or persuasion." *Chambers v. State of Florida*, 309 U.S. 227, 241 (1940).

Young's individual right to equal protection cannot be diminished by giving greater solicitude to the supposed interests of members of groups that are statistically more likely to experience bias. Equal protection is an individual, not group right. *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 227 (1995). All individuals are protected by equal protection irrespective of what classifications applied. *Plyer v. Doe*, 457 U.S. 202, 212 (1982).

The law cannot directly or indirectly give effect to private bias. *Palmore v. Sidoti*, 466 U.S. 429, 433 (1984). Constitutional duties cannot be avoided by bowing to hypothetical effects of bias. *Id.* This rule holds even where agents of the government believe discrimination would promote the public good. *Id.* at 434. "Under our constitutional system, courts stand against any winds that blow as havens of refuge for those who might otherwise suffer because [] they are non-conforming victims of prejudice and public excitement." *Chambers*, 309 U.S. at 241. The constitution forbids such "enforcement methods" as "lawless means irrespective of the end." *Id.* at 241.

**3. Free Speech**

Judge Brown was not empowered to punish Attorney Young simply because his filings below, appellate filings, and public comments were critical of how she handled these proceedings. "Officers of the court may appropriately express criticism on such matters." *In re Snyder*, 472 U.S. 634 (1985). "It is a prize American privilege to speak one's mind, although not always with perfect good taste, on all public institutions." *Bridges v. California*, 314 U.S. 252, 270 (1941). Attempts to protect the judiciary's dignity by silence produce "resentment, suspicion, and contempt" rather than respect. *Id.* at 271.

That Judge Brown took personal offense to Attorney Young's criticism does not change the calculus. "The law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion." *Craig v. Harney*, 331 U.S. 367, 376 (1947). Judges are supposed to be persons "of fortitude, able to thrive in a hardy climate." *Id.* Criticism of judicial officers "is expected. Discussion of their conduct is appropriate, if not necessary." *Id.* at 377. Criticism of a judge—including vehement, insulting, or unfair criticism—is protected speech. *Id.* at 373–76.

## II. RECORDS SHOULD NOT HAVE BEEN SEALED.

Judge Brown sua sponte directed that all filings pertaining to misconduct allegations against Young in the Second and Third Orders to Show Cause and Professor Butler's motion to recuse must be filed under seal. And despite holding at the April 2026 hearing that the transcript would be public, Judge Brown later ordered it sealed. These sealing orders are abuses of discretion. Federal judges do not have the power to seal whatever they wish to hide.

Our constitution does not allow the judiciary to preemptively hide court proceedings from the public. "Judicial records belong to the American people; they are public, not private, documents." *Bin Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). "The public has an interest in transparent court proceedings that is independent of the parties' interests." *June Medical Servs., LLC v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022) (en banc) (quoting *In re Gee*, No. 19-30953, 2019 WL 13067384, at 8 (5th Cir. 2019)).

Public access to judicial "serves to promote trustworthiness in the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better

perception of fairness." *BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209, 210 (5th Cir. 2019) (quoting *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010)).

Judge Brown's November 2025 sealing orders which preemptively directed the filing of responses to the Second Order to Show Cause and Butler's motion to recuse are abuses of discretion. No party sought sealing of those documents. And the orders did not provide any explanation for the filings should be sealed.

Sealing is "heavily disfavored." *June Medical Servs.*, 22 F.4th at 519–20 (citing *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450–51 (5th Cir. 2019). To decide whether something should be sealed, the trial court must undertake a "document-by-document, line-by-line balancing of the public's common law right of access against the interest favoring nondisclosure." *June Medical*, 22 F.4th at 521 (cleaned up).

Judge Brown's failure to explain and justify the sealing orders based on law let alone facts is an abuse of discretion. A district court abuses its discretion in sealing documents when it fails to identify and apply the proper legal standard and when it fails to provide sufficient

reasons for its decision to enable appellate review. *June Medical Services, LLC v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022) (Elrod, J.) (citing *United States v. Sealed Search Warrants*, 868 F.3d 385, 396–97 (5th Cir. 2017); *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848–49 (5th Cir. 1993)). This is precisely why this Circuit typically remands "so that the district court could make explicit findings as to the necessity of keeping that document sealed." *United States v. Sealed Search Warrants*, 868 F.3d 385, 397 (5th Cir. 2017) (cleaned up).

Judge Brown's April 22, 2026 sealing order is also abuse of discretion. It does not provide rationales or legal authority explaining why Young must preemptively file response to the Third Show Cause Order under seal.

Judge Brown's May 4, 2026 order sealing the April 2026 hearing transcript is also infirm despite some alleged facts and law being cited. Judge Brown purported to seal the April 2026 hearing transcript and make it unavailable to anyone but whom the Court personally approved to view it in person while surveilled by court personnel on the pretense that it qualified as a highly sensitive document. Record.

The hearing transcript does not qualify as a highly sensitive document. Pursuant to the Northern District of Texas' Miscellaneous Order 61-1, an HSD is defined as a "document that contains sensitive or confidential information that may be of interest to the intelligence service of a hostile foreign government and whose use or disclosure by a hostile foreign government would likely cause significant harm." N.D. Tex., Misc. Order 61-1 (Jan. 15, 2021), https://www.txnd.uscourts.gov/sites/default/files/documents/MO61-1.pdf.

The premise of Judge Brown's HSD designation is that a non-party's name is mentioned in part of the transcript and that same non-party alleged sexual assault. However, it is Judge Brown who injected such allegations into the record. Moreover, those allegations appear on public dockets in the Western District of Oklahoma. Information that is already public does not qualify for HSD designation. Nor does a transcript of a proceeding held in open court. *See generally June Medical Services, LLC v. Phillips*, 22 F.4th 512 (5th Cir. 2022).

## III. YOUNG DID NOT COMMIT MISCONDUCT.

**A. Seeking decisions and explanations is not misconduct.**

Before and after remand, Judge Brown chastised Attorney Young for filing motions and seeking explanation as to why they were or were not granted. Wrongly, Judge Brown insisted explanation need not be provided. And took umbrage when Young pointed out that reasoned explanation was necessary.

It strains credulity that a federal judge would think that she need not explain her decisions. "Judicial decisions are reasoned decisions." *Rita v. United States*, 551 U.S. 338, 356–57 (2007). And "those who apply the rule to particular cases, must of necessity expound and interpret that rule." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

Failure to provide meaningful explanation for denying or granting a motion exceeds the bounds of judicial discretion. *In re Lloyd's Register North America, Inc.*, 780 F.3d 283, 290–91 (5th Cir. 2015). Similarly, refusal to grant a litigant leave without any justifying rationales is also an abuse of discretion and inconsistent with the spirit of the federal rules of procedure. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The same is required in matters conferred to the equitable discretion of the trial judge. This discretion must be exercised considering applicable standards

correctly identified and applied with clear explanation. *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983).

Judge Brown's suggestion that her rationales for granting or denying motions and relief could be inferred from post hoc opinions and hearing statements months after a decision issued misses the mark. A trial judge's explanation must be adequate under the circumstances. *United States v. Bostic*, 970 F.3d 607 (5th Cir. 2020); *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 426 (5th Cir. 2004). Self-serving, post hoc explanations do not suffice. The record must reflect that the judge considered the parties arguments and had a reasoned basis for exercising her authority at the time a decision issued. *Chavez-Meza v. United States*, 585 U.S. 109, 116–19 (2018). This Circuit has long recognized that mere passing reference to legal rules unaccompanied by explanation is an inadequate explanation. *Bostic*, 970 F.3d at 612. This is a procedural error which constitutes an abuse of discretion. *Id.*

By extension of that logic, a judge's refusal to explain her decision at the time it issues should also be infirm. Federal law provides appeal as a matter of right—litigants must have the opportunity to have a higher court review an inferior court's decisions. 28 USC § 1291; 28 USC

§ 1292. "Explanation is essential for meaningful appellate review." *Paugh v. United States*, 569 U.S. 530, 537 (2013). District courts owe the parties and appellate tribunals "a way of understanding how the court reached its conclusion" that assures "it was the result of conscientious legal analysis." *Lloyd's*, 780 F.3d at 91.

Discretionary decisions are not, as Judge Brown insisted, unfettered by the obligation to ensure meaningful appellate review. *United States v. Taylor*, 487 U.S. 326, 336–37 (1988). A "district court must carefully consider [applicable standards] as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review." *Taylor*, 487 U.S. at 336–37. "Only then can an appellate court ascertain whether a district court has ignored or slighted a factor" relevant to the discretionary decision. *Id.* at 337.

At the very least, there must be written or oral explanation generated by the District Court, "not inferred by the appellate court from the submissions of the parties." *Lloyd's*, at 91. "A contrary rule would require [this Circuit] to guess the basis for the decision without guidance,

essentially reducing us to the role of replacing the district court's discretion with our own." *Id.*

**B. Declining to agree with the presiding judge is not misconduct.**

Judge Brown also repeatedly took the position that decisions made by federal trial judges are beyond reproach. On that premise, Judge Brown demanded that Attorney Young cease filing motions seeking reconsideration and also stop disagreeing with her misstatements of law and fact.

The judicial power includes the power to render dispositive judgments. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 218–19 (1995). And in our system judicial supremacy means that it is "the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177–78 (1803). However, an "independent judiciary and a vigorous, independent bar are both indispensable parts of our system of justice." *In re McConnell*, 370 U.S. 230, 236 (1962).

Adversarial proceedings depend upon litigants being knowledgeable of governing law. "In our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 590 U.S/ 371, 375 (2020). Courts "rely on the

parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). A central premise is that "the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Castro v. United States*, 540 U.S. 375, 385 (2003) (Scalia, J., concurring).

The judicial power wielded by Judge Brown does not give her the power to compel Attorney Young to agree with decisions he believes are legally and factually infirm. No litigant is obliged to agree with the trial court's determinations—it is his right to seek appeal. *See, e.g.*, *Tollett v. City of Kemah*, 285 F.3d 357, 366 (5th Cir. 2002).

"Vigorous representation follows from the nature of our adversarial system of justice." *Penson v. Ohio*, 488 U.S. 75, 84 (1988). Federal judges do "not have carte blanche to depart from the principle of party presentation basic to our adversary system." *Wood v. Milyard*, 566 U.S. 463, 472 (2012). Courts are not supposed to "sit as self-directed boards of legal inquiry and research." *NASA v. Nelson*, 562 U.S. 134, 147 n.10 (2011) (cleaned up). And litigants must be allowed "the opportunity to

present whatever legal arguments he may have." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976).

Judge Brown's insistence that motions Attorney Young lost warrant punishment also defies precedent. Counsel should not be sanctioned simply because he did not prevail on a legal theory. *See, e.g.*, *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791 (5th Cir. 1993) (en banc); *Smith International, Inc. v. Texas Commerce Bank*, 844 F.2d 1193, 1200 (5th Cir. 1988).

Judge Brown's suggestion that sanctioning Attorney Young was necessary to prevent him from making more filings is also contrary to law. The sanction power cannot be wielded for the purpose of chilling "counsel's enthusiasm" and most certainly should never be imposed in a manner calibrated to "stifle the creativity of litigants in pursuing novel factual or legal theories." *CJC Holdings*, 989 F.2d at 794 (cleaned up). Moreover, the "arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of court so long as the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty." *In re McConnell*, 370 U.S. 230, 236 (1962).

**C. Filing documents on an appellate docket is not misconduct.**

Judge Brown had no power to punish Young for filing the mandamus petition on this Circuit's public docket.

The trial court's inherent power to manage its own docket and issue orders in furtherance of justice does not extend to control of what attorneys file on this Circuit's docket. The inherent authority to regulate court proceedings is structurally limited. Trial judges' authority only extends to protect their court's proceedings. *See, e.g.*, *Caroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292–93 (5th Cir. 1997) (upholding sanction of attorney whose deposition conduct "disrupted the litigation" and showed "disrespect and contempt for the judicial processes of this court").

Young was under no obligation to seek leave from this Circuit to docket his mandamus petition under seal. Indeed, Judge Brown failed to consider that in this Circuit documents filed under seal in the trial court are not considered sealed for the purposes of appeal. *See, e.g.*, *BP Exploration & Production, Inc. v. Claimant ID 100246928*, 920 F.3d 209, 211 (5th Cir. 2019) (Costa, J.) ("Our court has a strong presumption of public access to our court's records, and the court scrutinizes any request

by a party to seal . . . Counsel moving to seal matters must explain in particularity the necessity for sealing in our court. Counsel do not satisfy this burden by simply stating that the court sealed the matter, as the circumstances that justified sealing in the originating court may have changed or may not apply in an appeal.”).

Trial judges have no power to police and punish attorney conduct before appellate courts. That is why the Supreme Court has refused to allow a trial court to sanction an attorney for appellate conduct. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 406–07 (1990). *Fletcher v. Experian Information Solutions, Incorporated*, 168 F.4th 231 (5th Cir. 2026) is also illustrative. There, Chief Judge Elrod holds that Federal Rule of Appellate Procedure 46(c) and the Circuit’s inherent powers empower it to discipline an attorney who practices before it for conduct unbecoming of a member of the bar or for failure to comply with any court rule.” *Fletcher*, 168 F.4th at 234 (citing *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 315 (5th Cir. 2020)).

**D. Misconduct cannot be manufactured from other cases.**

With respect to alleged misconduct committed by Young in other cases, including that alleged by his former client in matters closed and

still pending in the Western District of Oklahoma, this too was not within Judge Brown's power to consider let alone purport to redress. At most, a court's inherent authority permits it to police its own judicial process. It does not allow a judge to convert herself into investigator, accuser, prosecutor, and adjudicator of uncharged attorney misconduct.

Judicial office is not a license to investigate extrajudicial allegations and treat the judge's own investigation or suspicion as if it were adjudicated misconduct. *In re Murchison*, 349 U.S. 133, 136–39 (1955). Inherent authority does not permit a trial judge to become "a roving commission to supervise" an attorney. *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 619 F.3d 458, 462 (5th Cir. 2010). An attorney's conduct not before the trial court nor in direct defiance of its orders is beyond the reach of inherent authority to sanction. *Id.* at 461.

Judge Brown's suggestion that because she disliked Young she was empowered to search for misconduct elsewhere also misses the mark. Generally characterizing an attorney as someone who "can't behave

himself," who does not "have any ethics about him," or accusing him as not having "any respect for counsel or the court or anybody else" does not expand inherent authority powers. *In re Evans*, 524 F.2d 1004, 1006 (5th Cir. 1975). Specific allegations must be made by the trial judge and be adequately noticed in advance. And the attorney must be afforded "adequate opportunity to defend himself and his professional reputation." *Id.* at 1008.

Moreover, Judge Brown does not have the power to disregard a prior disciplinary adjudication and independently relitigate the same alleged misconduct. The ethics authority's determination that no misconduct occurred with respect to Dr. Tudor's allegations is the end of the line. A federal judge is without the power to reject the determination. *Selling v. Radford*, 243 U.S. 46, 50 (1917). *See also Doyle v. Oklahoma Bar Association*, 998 F.2d 1559, 1570 (10th Cir. 1993) (core function of ethics authorities is to weed out improper and unfounded claims of misconduct).

**E. Punishment upon remand for past conduct was impermissible.**

In November 2025 and again and April 2026 Judge Brown presumed she had the power to investigate and punish Attorney Young for conduct he allegedly committed years prior. She had no such power.

Judge Brown resolved the First Show Cause Order by declining to sanction Young. She could not rehear the same *sua sponte* accusations simply to punish Young after remand. "It was far too late in the day for the district judge [] to decide upon a new sanctions course of action" because the original concerns "should have been addressed and resolved by the original sanctions" opinion. *Tollett v. City of Kemah*, 285 F. 357, 366 (5th Cir. 2002).

**F. Young's pro hac vice admission should not have been revoked.**

Judge Brown's decision to summarily revoke Young's admission pro hac vice without a hearing and before he was afforded the opportunity to reply to Defendants response which urged revocation was erroneous.

"Courts enjoy broad discretion to determine who may practice before them and to regulate the conduct of those who do." *United States v. Nolen*, 472 F.3d 362, 371 (5th Cir. 2006). However, disqualification of counsel "is an extreme remedy that will not be imposed lightly." *McCuin*, 714 F.2d at 1262–63 (cleaned up). Given the quasi-criminal nature of

such proceedings, due process mandates that "any disciplinary rules employment [] must be strictly construed, resolving ambiguities in favor of the attorney charged." *In the Matter of Sealed*, 194 F.3d 666, 670 (5th Cir. 1999).

"A federal court may [revoke admission of] an attorney only upon presentation of clear and convincing evidence sufficient to support the finding of one or more violations warranting this extreme sanction." *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992). *See also FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1316 (5th Cir. 1995). The burden to establish misconduct supporting a show cause order of this ilk is on the trial judge. *United States v. Nolan*, 472 F.3d 362, 372 (2006).

Judge Brown's summary revocation order and the notice providing post hoc justifications issued after mandamus was filed and still pending before this Circuit misses the mark. Among other things, Judge Brown never considered that Young is admitted to other courts and remains in good standing. This "creates a presumption of good moral character that cannot be overcome merely by the whims of the District Court." *In re Evans*, 524 F.2d 1004, 1007 (5th Cir. 1975).

Additionally, the summary revocation order did not consider Professor Butler's right to choose her own counsel. *United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir. 1976). This right "should be freely exercised without impingement." *Mosley v. St. Louis Southwestern Railway*, 634 F.2d 942, 946 (5th Cir. 1981). It can only be overridden where the trial court has satisfied the "extraordinary burden of showing that it is compelled to deprive [the litigant of her] fundamental right to choose [her] own counsel." *Texas Catastrophe Property Ins. v. Ass'n v. Morales*, 975 F.2d 1178, 1181 (5th Cir. 1992). *See also Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976).

Judge Brown's reliance upon opposing counsel's suggestion that Young's admission be revoked could not dispositively factor into the decision to revoke his admission as sanction. A trial judge cannot rely upon interested opposing counsel's proffer without conducting its own independent inquiry, something impossible given the timing of opposing counsel's filing and the summary revocation order. *Crowe v. Smith*, 151 F.3d 217, 232–33 (5th Cir. 1998). This is more egregious because opposing counsel accused Young of lying about reporting his concerns of Judge Brown committing judicial misconduct and potentially having a

disability that precluded her from holding judicial office. (Young did not lie.) An attorney must be given the opportunity to rebut or disprove evidence mounted against him. *Nolan*, 472 F.3d at 372.

**G. Once Young was no longer counsel, he could not be punished as such.**

The Third Order to Show Cause never should have issued. "Courts enjoy broad discretion to determine who may practice before them and to regulate the conduct of those who do." *United States v. Nolen*, 472 F.3d 362, 371 (5th Cir. 2006).

The baselessness of the Third Order to Show Cause is all the more apparent if the authorities supposedly supporting its issuance are considered. For instance, *Dondi Properties Corp. v. Commerce Savings & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc) establishes binding standards of civil conduct for attorneys appearing in the Northern District of Texas. Pursuant to Special Order 2-100, the *Dondi* standards are applicable pursuant to Local Rule 83.4.1, which states "An attorney appearing in a civil action must comply with the standards of litigation conduct adopted in *Dondi*[.]" N.D. Tex., Special Order 2-100 (filed July 30, 2025), https://www.txnd.uscourts.gov/sites/default/files/orders/SO2-100.pdf.

Neither *Dondi* nor Local Rule 83.4.1 are applicable to the alleged conduct identified. The order alleges Young committed misconduct in April 2026, more than 140 days after his pro hac vice admission was revoked, by making an unidentified post on his personal website. Neither *Dondi* nor the implementing local rule apply to a non-party non-admitted attorney's conduct outside of court.

The other rule cited by the Third Order to Show Cause is also inexplicable on this record. Federal Rule of Civil Procedure 11(a) requires that all filings be "signed by at least one attorney of record in the attorney's name" and include the signer's address, email, and telephone number. This rule has no application to Young's website. Rule 11(a) establishes standards for court filings. It does not speak to dissemination of publicly accessible judicial records outside of litigation let alone via a personal website.

## IV. REASSIGNMENT IS NECESSARY.

Under normal circumstances, it should be presumed that a trial judge is capable of correction by appeal without disqualification. Pointing out that the trial court is mistaken is a collegial and appropriate way to proceed which presumes the good faith and willingness of the trial court

to comply. *S.S. Kresge Co. v. Winget Kickernick Co.*, 102 F.2d 740, 742 (8th Cir. 1939). However, under the unique circumstances of this case, reassignment upon remand should be granted.

First and foremost, Young discloses that he filed a judicial misconduct complaint against Judge Brown that is currently pending and of which she has been made aware through appropriate channels. This Circuit has long recognized that "many attorneys are fearful of even filing a complaint against a judge to a circuit judicial council, due to fear of retaliation from the complained-against judge." *United States v. Anderson*, 160 F.3d 231, 233 (5th Cir. 1998). Because a reasonable person would doubt a judge aware of such grievance would be impartial, and to avoid even the appearance of impropriety, recusal is all but required. *Id.* at 233–34 (citing *United States v. Jordan*, 49 F.3d 152, 155–56 (5th Cir. 1996)). Nevertheless, Judge Brown has not on her own initiative recused.

Second, the record reflects that Judge Brown failed to disclose her connections to SMU Law and the Individual Defendants upon assignment of this case in 2019. That Judge Brown went on to shore up and strengthen those connections publicly as this case was pending before her should have required her to consider recusal at the very least.

Rather than preemptively consider recusal, Judge Brown purported to wield the judicial power granted by Article III to punish Young and Butler for asking her to consider recusal as called for pursuant to this Circuit's mandate in *Butler I.* This inexplicable dereliction of duty over the course of several years and multiple weighs in favor of appellate intervention to force Judge Brown to do what she should have done in the first and second instance. The appearance of impropriety is too great on this record. The fact that the proceedings are mature does not change the calculus. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988) ("forgetful" judge with close relationship to university with interest in litigation must retroactively vacate judgment).

Third, this Circuit should take into account that Judge Brown spent the entirety of this matter spreading invective against Butler and, when he joined as counsel, Young. Coupled with a series of important decisions entered in summary fashion, reflecting no effort to apply law to facts adduced by the judicial officer, and the hostilities that followed Young's efforts to seek explanation reassignment is also necessary.

This Circuit's opinion in *M.D. v. Abbot*, 119 F.4th 373 (5th Cir. 2024) is directly on point. There this Circuit reversed a contempt order

and removed the trial judge from the case. This was deemed necessary given the trial judge's demeanor and statements over the course of the litigation. To wit, "a sustained pattern, over the course of months and numerous hearings, of disrespect for [the litigant and her] counsel" requires reassignment. *Id.* at 394. "When a judge's actions stand at odds with these basic notions of fairness and impartiality, we must act or suffer the loss of public confidence in our judicial system." *Id.* at 395 (quoting *Miller v. Sam Houston State University*, 986 F.3d 880, 883 (5th Cir. 2021)) (cleaned up).

*In re DaimlerChrysler Corp.*, 294 F.3d 697 (5th Cir. 2002) is also on point. There, this Circuit directed reassignment because of the district judge's hostility towards parties and counsel after prior remand. This was necessary because even if "true that the district court agreed to abide by any ruling that this court makes, the failure of the district court to address our earlier opinion on this matter [] convinces us that, notwithstanding all good faith efforts on the part of the district court, it would be exceedingly difficult for the district court to regain some impartiality in this case." *Id.*

## CONCLUSION

For all of the foregoing reasons Attorney Young respectfully requests that this Circuit reverse and remand this matter to the Northern District of Texas with an instruction that it be reassigned.

Dated: August 18, 2026

Respectfully submitted,

/s/ Ezra Young
EZRA ISHMAEL YOUNG
LAW OFFICE OF EZRA YOUNG
210 North Sunset Drive
Ithaca, New York 14850
Telephone: (949) 291-3185

*On His Own Behalf*

## CERTIFICATE OF SERVICE

I certify that on August 18, 2026, I electronically filed the foregoing Motion using the Court's CM/ECF system, which constitutes service under the Court's rules.

/s/ Ezra Young
EZRA ISHMAEL YOUNG
LAW OFFICE OF EZRA YOUNG

*On His Own Behalf*

## FRAP 32(a)(7) CERTIFICATE OF COMPLIANCE

I certify that this Brief has been prepared in Microsoft Word using 14-point, proportionally spaced font, and that based on word processing software, the brief contains 12,921 words, excluding items that do not count towards the word limit pursuant to Fed. R. App. P. 32(f).

/s/ Ezra Young
EZRA ISHMAEL YOUNG
LAW OFFICE OF EZRA YOUNG

*On His Own Behalf*